# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRIS T. VOLKING,

       Plaintiff,

v.

                                      Case No. 22-1046-DDC-KGG

AIRXCEL, INC.,

       Defendant.

---

## MEMORANDUM AND ORDER

      Defendant Airxcel, Inc. employed plaintiff Chris Volking in various positions starting in 2010.  After sustaining a workplace injury at defendant's warehouse in 2017, plaintiff filed a worker's compensation claim.  Later, defendant's insurer investigated plaintiff's activity.  After receiving video of plaintiff walking and jogging, plaintiff's doctors sent letters to the insurer withdrawing their treatment.  Defendant then assigned plaintiff to a different position in its warehouse that complied with the restrictions prescribed by his doctor.  The parties later settled plaintiff's worker's compensation claim.  In 2020, when the COVID-19 pandemic caused the warehouse to shut down temporarily, defendant reorganized its operation and eliminated plaintiff's position as part of a reduction in force.

      Plaintiff brings a single claim against defendant.  It asserts that defendant wrongfully terminated plaintiff's employment as retaliation for him filing a worker's compensation claim, violating his rights under the Kansas Worker's Compensation Act, Kan. Stat. Ann. §§ 44-501–65.  Plaintiff claims that defendant's executives had exhibited malice against him since he filed his worker's compensation claim in 2017, and that defendant used a reduction in force plan enacted during the pandemic as a pretext to get rid of him.

In January 2022, plaintiff initially filed his retaliation claim against defendant in Sedgwick County, Kansas, District Court. *See* Doc. 1-1 at 2. The following month, defendant removed the case from Kansas state court to this court (Doc. 1),[1] and now has filed a Motion for Summary Judgment (Doc. 23) against plaintiff's claim. Plaintiff responded (Doc. 28) and defendant replied (Doc. 35), so the matter is fully briefed. For reasons explained below, the court grants defendant's motion.

## I.     Summary Judgment Facts

The following facts either are stipulated in the Pretrial Order (Doc. 22), uncontroverted, or where genuinely controverted, viewed in the light most favorable to plaintiff—the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

Defendant designs and manufactures components for recreational vehicles. Doc. 22 at 2 (Pretrial Order ¶ 2.a.1.). Defendant's RV Products division operates a facility and warehouse in Wichita, Kansas, where it manufactures rooftop air conditioning units. *Id.* (Pretrial Order ¶ 2.a.2.). Plaintiff began working for the RV Products division in 2010 and had held a number of positions during his employment there. *Id.* (Pretrial Order ¶¶ 2.a.3.–4.). In June 2017, plaintiff worked as a "lead" in the warehouse. Doc. 28-1 at 21–22 (Volking Dep. 64:6–17, 67:1–16). On June 15, 2017, a stack of pallets fell from the back of a truck onto plaintiff, knocking him

---

[1]      In the Pretrial Order, the parties invoke subject matter jurisdiction in this court under 28 U.S.C. § 1331. Doc. 22 at 1 (Pretrial Order ¶ 1.a.). But plaintiff doesn't assert a violation of federal law, as required for the court to exercise jurisdiction under § 1331. Instead, defendant properly asserts diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Montana. Doc. 1 at 3 (Notice of Removal ¶ 9) (citing Doc. 1-1 at 2 (Pet. ¶ 1)); *see also* Doc. 8 at 2 (Def.'s Resp. Order Show Cause). Defendant is a Delaware corporation, with its principal place of business in either Indiana or Colorado. Doc. 1 at 3 (Notice of Removal ¶ 10) (citing Doc. 1-1 at 2 (Pet. ¶ 2)); *see also* Doc. 8 at 3–4 (Def.'s Resp. Order Show Cause). Thus, the parties are diverse for subject matter jurisdiction purposes. The amount in controversy also exceeds the statutory threshold of $75,000. Doc. 1 at 3 (Notice of Removal ¶ 12) (citing Doc. 1-1 at 5 (Pet.)). Because the court lacks jurisdiction under § 1331, it treats the Pretrial Order's reference to that provision as a scrivener's error and, instead, exercises subject matter jurisdiction under 28 U.S.C. § 1332(a).

unconscious and injuring him.  *Id.* at 30, 46–47 (Volking Dep. 69:9–23, 70:10–71:16); *see also* Doc. 22 at 3 (Pretrial Order ¶ 2.a.9.).  After the accident, plaintiff complained of a head injury causing migraine headaches.  Doc. 28-4 at 2.  Plaintiff submitted a worker's compensation claim in June 2017.  Doc. 22 at 3 (Pretrial Order ¶ 2.a.9.).

In September 2017, plaintiff returned to work at RV Products.  *Id.* (Pretrial Order ¶ 2.a.10.).  When he returned, plaintiff was subject to Neurologist Eva Henry's prescribed restrictions.  *Id.*; *see also* Doc. 28-1 at 58–59 (Volking Dep. 77:1–78:17).  On the day he returned to work, plaintiff left early because of his migraines.  Doc. 28-1 at 62–63 (Volking Dep. 80:23–81:20).  Plaintiff left work early for the same reason later that week, after which Dr. Henry again placed him on leave.  *Id.* at 64 (Volking Dep. 84:8–25).

At the time of plaintiff's injury, defendant contracted with The Hartford as its worker's compensation insurance carrier.  Doc. 24-4 at 2.  In November and December 2017, The Hartford investigated plaintiff by observing him outside his home and in public.  *Id.* at 2, 4.  During the investigation, The Hartford's investigator recorded video of plaintiff "as he added and removed layers of clothing, stretched, walked, jogged, and entered, exited, and operated a motor vehicle."  *Id.* at 4.  In January and February 2018, The Hartford sent plaintiff's treating physicians a copy of the surveillance report and video.  Doc. 28-4 at 2; Doc. 24-5 at 2.  Dr. Henry responded that, based on the video, she "would assume that [plaintiff] no longer wish[ed] to seek treatment, whether or not he has reached [maximum medical improvement (MMI)]" and that she didn't "recommend any future medical care."  Doc. 28-4 at 2.  Dr. John Ciccarelli, who had started treating plaintiff for complaints of neck, back, and leg pain, also responded that he could "no longer recommend the previously proposed surgery or any other treatment as medically necessary as it relates to his subjective spinal and leg complaints."  Doc. 24-5 at 2.

The Hartford provided defendant with Dr. Ciccarelli's letter.  Doc. 24-2 at 3 (Kohr Decl. ¶ 7).  On February 20, 2018, plaintiff met with Kristine Kohr, RV Products' human resources manager, to discuss his return to work.  *Id.* (Kohr Decl. ¶¶ 8–9).  During the meeting, Ms. Kohr explained to plaintiff that his physicians released him to return to work.  *Id.* (Kohr Decl. ¶ 9).  Plaintiff responded that, if he returned to full duty, "he would be going to the hospital in two weeks."  *Id.*  Defendant placed plaintiff on leave for a week while it investigated the issues in Dr. Ciccarelli's letter.  *Id.* (Kohr Decl. ¶ 10).  Three days later, defendant received Dr. Henry's letter reporting that she had released plaintiff from her care, as well.  Doc. 24-2 at 3 (Kohr Decl. ¶ 11).

On February 27, 2018, plaintiff met with Ms. Kohr and Robin Leach, RV Products' president, to discuss again plaintiff's return to work.  *Id.* (Kohr Decl. ¶ 12).  At that meeting, plaintiff signed a Work Agreement with defendant.  Doc. 22 at 3 (Pretrial Order ¶ 2.a.11.).  That agreement transferred plaintiff to the warehouse working in the role of inventory control/shipping quality inspector on second shift.  *Id.*  It also retained his regular pay rate.  *Id.*  The new role restricted plaintiff's activities at work, forbidding climbing, using a forklift and pallet jack, lifting more than 15 pounds, and "excessive bending or twisting."  Doc. 24-6 (Def.'s Ex. 6).  A doctor later prescribed the same restrictions—plus a few others—when releasing plaintiff for work in June 2018.  *See* Doc. 24-8 (Def.'s Ex. 8).  Plaintiff's role as inventory control/shipping quality inspector required him to check products for leaks, write rejection tags for damaged units, and verify the stock count against paperwork to ensure accuracy.  Doc. 22 at 3 (Pretrial Order ¶ 2.a.12.).

In the same February meeting, defendant issued plaintiff a Correction Action Procedure, Written Notice—Step 1.  Doc. 24-2 at 4 (Kohr Decl. ¶ 15).  Defendant issued the written notice based on the correspondence from plaintiff's treating physicians reporting that the activities they

viewed in the surveillance video were "not consistent with [plaintiff's] reported pain and functional level[.]"  *Id.*

Plaintiff settled his worker's compensation case with defendant on November 25, 2019. Doc. 22 at 3 (Pretrial Order ¶ 2.a.13.).  In the settlement, plaintiff received $27,238 in compensation.  *Id.*  Plaintiff continued his employment with RV Products as inventory control/shipping quality inspector after his case settled.  *Id.*

In March 2020, the RV Products facility in Wichita shut down temporarily in response to the COVID-19 pandemic.  *Id.* (Pretrial Order ¶ 2.a.14.).  Defendant provided written notice to its employees there, including plaintiff, that the company was placing them all on furlough.  *Id.*; *see also* Doc. 24-10 (Def.'s Ex. 10).  That written notice told employees that the "unpaid shutdown will initially be from March 25th to April 7th, potentially longer, pending communication from" customers.  Doc. 24-10 at 2; *see also* Doc. 22 at 4 (Pretrial Order ¶ 2.a.15.).  During the shutdown, defendant's executives "continued to analyze operational efficiencies and personnel attributes to make the facility more efficient upon re-opening."  Doc. 22 at 4 (Pretrial Order ¶ 2.a.16.).  As part of that process, defendant determined that the inventory control/shipping quality inspector position no longer was necessary and permanently eliminated the position, sending written notice to plaintiff.  *Id.* (Pretrial Order ¶¶ 2.a.16., 18.); *see also* Doc. 24-13 (Def.'s Ex. 13).  At the time, plaintiff and another employee working on the first shift occupied that position.  Doc. 22 at 4 (Pretrial Order ¶ 2.a.16.).  Defendant provided written notice to employees that seniority was only one factor it considered when deciding which positions to eliminate.  *Id.* (Pretrial Order ¶ 2.a.19.).  Other factors included business necessity, expertise, and past performance.  *Id.*  Defendant permanently eliminated the inventory control/shipping quality

inspector position, and other positions absorbed the duties previously performed by that position. *Id.* at 4–5 (Pretrial Order ¶¶ 2.a.22.–23.).

Between April and June 2020, defendant recalled many of its furloughed employees, 78 of whom had filed worker's compensation claims against defendant in the past.  Doc. 22 at 4 (Pretrial Order ¶¶ 2.a.17., 20.); *see also* Doc. 24-2 at 5 (Kohr Decl. ¶ 23).  Counting plaintiff, defendant permanently laid off 58 RV Products employees, 53 of whom had never filed a worker's compensation claim.  Doc. 22 at 5 (Pretrial Order ¶ 2.a.24.); *see also* Doc. 24-2 at 5 (Kohr Decl. ¶ 24).  The other employee who held the inventory control/shipping quality inspector position had not filed a worker's compensation claim against defendant before defendant eliminated the position.  Doc. 24-2 at 5 (Kohr Decl. ¶ 22).  Plaintiff never applied for any position with defendant after it eliminated his position.  Doc. 22 at 4 (Pretrial Order ¶ 2.a.21.).  Nor did he contact defendant to ask about other potential employment opportunities. *Id.*

RV Products provides an employee handbook, which, in 2015 contained a policy requiring employees who experience harassment or retaliation to report the incident to their supervisor or the human resources department.  *Id.* at 2 (Pretrial Order ¶ 2.a.5.).  The handbook also established a progressive discipline policy that required termination of an employee after three written corrective action notices within a 12-month period, a job bidding policy that prohibits "bumping" on the basis of seniority, and a reduction in force policy that places laid-off employees on a recall roster for as long as six months.  *Id.* at 2–3 (Pretrial Order ¶¶ 2.a.6.–8.).

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact" and that the movant is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence and make

inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible

in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

Finally, when a district court exercises diversity jurisdiction, it applies state substantive law and federal procedural law. *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012); *see also Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965). State substantive law includes both statutes passed by the state legislature and case law precedent decided by state courts. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("[W]hether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.").

## III.  Analysis

Plaintiff has alleged that defendant wrongfully discharged him in April 2020 as retaliation for filing a worker's compensation claim. Kansas law recognizes a cause of action against employers who discharge employees in retaliation for exercising their rights under the Kansas Worker's Compensation Act. *Murphy v. City of Topeka-Shawnee Cnty. Dep't Lab. Servs.*, 630 P.2d 186, 192–93 (Kan. Ct. App. 1981). When analyzing such a retaliatory discharge claim at the summary judgment stage, Kansas courts apply the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Scheffler v. United Parcel Serv., Inc.*, 689 F. Supp. 2d 1300, 1304 (D. Kan. 2010) (citing *Rebarchek v. Farmers Coop. Elevator*, 35 P.3d 892, 898–99 (Kan. 2001)).

This framework requires plaintiff, first, to establish a prima facie case of retaliatory discharge. *Id.* (citing *Rebarchek*, 35 P.3d at 899). If plaintiff establishes a prima facie case,

defendant then bears the burden to demonstrate a legitimate, nonretaliatory reason that it terminated plaintiff's employment. *Id.* (citing *Rebarchek*, 35 P.3d at 898). If defendant satisfies that requirement, the burden then shifts back to plaintiff to adduce evidence that defendant's legitimate, nonretaliatory reason is pretextual. *Id.* (citing *Rebarchek*, 35 P.3d at 898). And if "plaintiff comes forward with evidence that raises genuine issues concerning defendant's motivation, then 'he is entitled to test his case before a jury.'" *Id.* (quoting *Rebarchek*, 35 P.3d at 901).

Defendant's motion here argues that plaintiff hasn't met his prima facie burden for a retaliatory discharge claim based on worker's compensation activity. And even if plaintiff has established his prima facie case, defendant contends, he can't demonstrate that defendant's decision was pretextual. The court agrees with defendant on both fronts. It explains why, below.

### A.  Plaintiff's Prima Facie Burden

Defendant's first argument maintains that plaintiff can't demonstrate a causal connection between his worker's compensation claim filed in June 2017 and his position's elimination nearly three years later in April 2020. Because plaintiff can't demonstrate a legally sufficient basis for finding a causal connection, defendant contends, he fails to meet his burden to establish a prima facie case of worker's compensation retaliatory discharge.

To establish a prima facie case of retaliatory discharge, Kansas requires the plaintiff to identify summary judgment facts which permit a reasonable jury to find or infer that: (1) plaintiff filed a worker's compensation claim or sustained an injury that allows a future benefits claim; (2) defendant knew of the claim or injury; (3) defendant terminated plaintiff's employment; and (4) plaintiff's discharge bears a causal connection to his protected activity or injury. *Scheffler*, 689 F. Supp. 2d at 1304 (citing *Rebarchek*, 35 P.3d at 899).

9

Defendant concedes plaintiff has satisfied the first three elements.  Specifically, he filed a worker's compensation claim after his workplace accident in June 2017.  Doc. 22 at 3 (Pretrial Order ¶ 2.a.9.).  Defendant knew about this claim.  *Id.*  And defendant eliminated plaintiff's position in April 2020.  *Id.* at 4 (Pretrial Order ¶ 2.a.18.).  But defendant argues that plaintiff "can show absolutely no causal connection between the filing of his worker's compensation claim in 2017 and the elimination of his position nearly *three years* later in connection with the onset of an unexpected global pandemic."  Doc. 24 at 18.  Indeed, defendant contends— correctly—that plaintiff's response to the summary judgment motion "wholly fails to address [defendant's] argument that he has not [stated] and cannot state a prima facie case of retaliatory discharge" and instead skips "straight to the argument that [defendant's] decision to eliminate Plaintiff's position was pretextual."  Doc. 35 at 32.

When discussing this fourth element of his prima facie case, plaintiff asserts, "The RIF was a pretext to mask [defendant's] punishment against Plaintiff for making a worker's compensation claim.  When jobs became widely available after his permanent layoff, Plaintiff could have done almost any job in the Warehouse."  Doc. 28 at 28.  This argument supports defendant's argument that plaintiff's summary judgment response skips the initial step of the burden-shifting framework and jumps, instead, straight to pretext.  Defendant argues that plaintiff "therefore abandoned any argument that he *did*, in fact, satisfy his prima facie burden." Doc. 35 at 33 (citing *Semsroth v. City of Wichita*, No. Civ.A. 04-1245 MLB, 2005 WL 2708337, at *5 n.5 (D. Kan. Oct. 21, 2005) ("Failure to make argument or cite authority constitutes abandonment.") (further citations omitted)).

But our Circuit has instructed—albeit in the Title VII context—that plaintiff's burden at the prima facie stage remains slight.  *See Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir.

2016) (holding that "plaintiff must make only a '<em>de minimis</em> showing' to establish a prima facie

case . . . under the <em>McDonnell Douglas</em> framework" (quoting <em>Plotke v. White</em>, 405 F.3d 1092,

1102 (10th Cir. 2005))); <em>see also Tex. Dep't of Cmty. Affs. v. Burdine</em>, 450 U.S. 248, 253 (1981)

("The burden of establishing a prima facie case of disparate treatment is not onerous.").  And at

summary judgment, the court must "view the evidence and make inferences in the light most

favorable to the non-movant."  <em>Nahno-Lopez</em>, 625 F.3d at 1283.  Assuming that these same

principals adhere to a state law claim that uses the <em>McDonnell Douglas</em> framework, the court puts

aside plaintiff's eagerness to jump ahead in the analysis and, instead, determines whether he has

adduced evidence that—when viewed in the light most favorable to him—demonstrates a

genuine dispute of material fact about the causal connection of the test's fourth element.  To

meet this burden on causal connection, plaintiff "must set out specific facts showing a genuine

issue for trial" that are "supported by competent evidence."  <em>Id.</em> (quotation cleaned up).

     Aiming to meet this burden, plaintiff contends that his worker's compensation "case was

settled on November 25, 2019 and he was fired on April 10, 2020 . . . within five months of his

settlement."  Doc. 28 at 33.  A plaintiff may demonstrate a causal connection "by evidence such

as protected conduct closely followed by adverse action."  <em>Coleman v. Blue Cross Blue Shield</em>,

487 F. Supp. 2d 1225, 1255 (D. Kan. 2007) (citing <em>Conner v. Schnuck Mkts., Inc.</em>, 121 F.3d

1390, 1395 (10th Cir. 1997)).  But unless plaintiff can demonstrate "very close temporal

proximity between the protected activity and the retaliatory conduct, the plaintiff must offer

additional evidence to establish causation."  <em>Id.</em> (citing <em>O'Neal v. Ferguson Constr. Co.</em>, 237 F.3d

1248, 1253 (10th Cir. 2001)).

     Plaintiff argues that the time between his worker's compensation claim settlement and his

position's elimination demonstrates a basis for the requisite causal connection.  In contrast,

defendant contends, the "case law very clearly holds that it is the *filing* of the claim that the Court should consider when evaluating a causal connection."  Doc. 35 at 33–34 n.4 (first citing *Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n of Dighton*, 13 P.3d 17, 24 (Kan. Ct. App. 2000), *aff'd in part, rev'd in part*, 35 P.3d 892 (Kan. 2001) (measuring time period for causal connection based on plaintiff's filing of the worker's compensation claim); then citing *Nguyen v. IBP, Inc.*, 905 F. Supp. 1471, 1482 (D. Kan. 1995) (holding that "[r]easonable minds could differ over whether the five months between [plaintiff's] injury and his termination amounts to a temporal nexus")).  Our Circuit has held that "the four month time lag between [plaintiff's] participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation."  *Conner*, 121 F.3d at 1395.  Thus, it doesn't matter whether the court measures the time from the date when plaintiff filed his worker's compensation claim or when he settled it—neither event occurred within a timeframe that our Circuit considers proximate enough to establish (by itself) a causal connection.

Because plaintiff fails to demonstrate a temporal proximity between his protected activity and his position's elimination, he must identify other evidence that could demonstrate a causal connection.  But he has adduced no such evidence.  Plaintiff argues that he has "evidence of rampant anger of his bosses for his worker's compensation claim" and "sudden hostility towards Plaintiff, especially after he was punished on February 20, 2018 and February 27, 2018 for making a phony compensation claim."  Doc. 28 at 32.  But he never identifies any evidence in the summary judgment record to support either one of his broad, abstract assertions.  The Federal Rules of Civil Procedure and cases explaining how summary judgment works in federal court establish that rhetoric is no substitute for evidence.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . (A) citing to

particular parts of materials in the record[.]"); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022) (holding that "to defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise" (quotation cleaned up)); *Adler*, 144 F.3d at 679 (holding that "bald assertions . . . that there are genuine issues of material fact are insufficient" to preclude summary judgment); *Painter v. Midwest Health, Inc.*, No. 19-2336-DDC, 2021 WL 4439432, at *31 (D. Kan. Sept. 28, 2021) ("At summary judgment, colorful rhetoric is no substitute for admissible evidence.").

A considerable portion of the evidence plaintiff has submitted with his Memorandum in Opposition consists of documents already submitted by defendant with its motion (Docs. 28-2, 28-3, 28-6) and an unordered assortment of pages excerpted from plaintiff's deposition transcript (Doc. 28-1). The remainder of plaintiff's record evidence remains unrelated to demonstrating a causal connection between his worker's compensation claim and defendant's decision to eliminate his position. Plaintiff's exhibits include:

- Dr. Henry's letter to The Hartford (Doc. 28-4);

- a medical report from Dr. Henry about her treatment of plaintiff (Doc. 28-5);

- screenshots of news articles (Docs. 28-7, 28-8, and 28-9);

- plaintiff's medical report from Advanced Pain Medicine Associates addressed to his worker's compensation attorney (Doc. 28-10);

- plaintiff's Corrective Action Procedure, Written Notice—Step 2 (about an incident in October 2018) (Doc. 28-11);

- an email from plaintiff's worker's compensation attorney to defendant's insurer about correspondence from plaintiff's doctors (Doc. 28-12);

- an email from plaintiff's worker's compensation attorney to plaintiff about his attorney's interpretation of Dr. Henry's reports (Doc. 28-13); and

- pictures of plaintiff after the workplace accident (Doc. 28-14).

Plaintiff never explains how any of these exhibits might provide a basis for finding the requisite causal connection or even a disputed issue of material fact for defendant's purported "rampant anger" or "sudden hostility," even when viewed in the light most favorable to plaintiff.

The only evidence plaintiff has adduced that might implicate defendant's actions toward him is the written notice he received in October 2018. *See* Doc. 28-11 at 2. But that written notice doesn't involve any of the executives who, plaintiff claims, demonstrated animus toward him for his worker's compensation claim. *Id.* And it declines to impose a suspension on defendant as a punishment, undermining plaintiff's assertion that defendant demonstrated hostility toward him. *Id.* So, even though plaintiff asserts that he has "evidence of rampant anger of his bosses for his worker's compensation claim[,]" Doc. 28 at 32, none of the evidence he provides supports that assertion. Plaintiff "at all times bears the ultimate burden of persuasion[,]" which requires him to "produce evidence from which a reasonable jury could believe" defendant retaliated against him. *Conner*, 121 F.3d at 1396 (quotations cleaned up). Plaintiff doesn't shoulder that burden here.

Instead, plaintiff's evidence appears more relevant to litigating the appropriateness of his "suspension" in February 2018—and not whether defendant retaliated against plaintiff by eliminating the position he held. Drawing even the most liberal inferences from plaintiff's evidence fails to meet our Circuit's standard for "material" facts when applied to the causal connection element. *See Nahno-Lopez*, 625 F.3d at 1283 ("An issue of fact is 'material' if under

the substantive law it is essential to the proper disposition of the claim or defense." (quotation cleaned up)).

In sum, there's no genuine dispute of material fact about any evidence of the causal connection that plaintiff must establish at trial. Since plaintiff's attempts to meet the fourth element of a prima facie case rely solely on bare assertions of defendant's animus and their connection to his dismissal, plaintiff fails to meet his burden at this first step of the framework.

### B. Plaintiff's Burden to Demonstrate Pretext

The court's analysis could end with its conclusion that plaintiff fails to state a prima facie case. But since plaintiff's burden in establishing his prima facie case "is not onerous[,]" *Burdine*, 450 U.S. at 253, the court's analysis continues—addressing the remainder of the burden-shifting framework. As the court explains below, even if plaintiff could meet his prima facie burden, he fares no better at satisfying the third stage of the burden-shifting framework. That is, plaintiff has failed to adduce evidence that could permit a reasonable factfinder to find or infer that defendant's legitimate, nonretaliatory reason was pretextual.

When a plaintiff establishes his prima facie case, the burden shifts to defendant to "clearly set forth, through the introduction of admissible evidence, the reasons" it discharged plaintiff. *Id.* at 255. Defendant "need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) (quotation cleaned up); *cf. Burdine*, 450 U.S. at 254–55 ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated from employment] . . . for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons.").

Here, defendant has introduced evidence that it decided to undertake a reduction in force—a RIF—brought on by the COVID-19 pandemic. *See* Doc. 24-1 at 2–3 (Leach Decl. ¶¶ 5–6, 11); Doc. 24-2 at 4 (Kohr Decl. ¶¶ 18–19); Doc. 24-3 at 23 (Volking Dep. 179:15–20); Doc. 24-9 at 2–4; Doc. 24-10 at 2; Doc. 24-12 at 2; Doc. 24-13 at 2.  A RIF generally suffices as a "neutral, non-discriminatory reason for" termination. *Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 946 (10th Cir. 2016); *see also Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 986 (10th Cir. 1996) (holding "the wisdom of a RIF is not for a court or jury to decide" since it's "a business decision, and [a retaliation action] is not a vehicle for reviewing the propriety of business decisions" (quotation cleaned up)); *Berry v. Airxcel, Inc.*, No. 20-1362-KHV, 2022 WL 2952511, at *7 (D. Kan. July 26, 2022) (recognizing that "an economic downturn in a given industry is a legitimate, non-discriminatory reason for a reduction in force and that a reduction in force is a legitimate, non-discriminatory reason for termination of an employee" (citations omitted)).  This precedent leads the court to conclude that defendant has met its burden to produce evidence that could demonstrate a legitimate, nonretaliatory reason for eliminating plaintiff's position.

Once defendant meets its burden of production, any presumption of retaliation "simply drops out of the picture[,]" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993), and plaintiff "retains the burden of persuasion . . . to demonstrate that the proffered reason was not the true reason for the employment decision[,]" *Burdine*, 450 U.S. at 256.  Plaintiff may do this "either through the use of direct evidence or by showing that [defendant's] proffered non-retaliatory reasons for terminating him were pretextual." *Conner*, 121 F.3d at 1396 (citation omitted).  Here, plaintiff has no direct evidence that defendant's proffered reason was not the

real reason.  So, he "must produce evidence from which a reasonable jury could believe that the defendant's proffered reason is a false one in order to survive summary judgment."  *Id.*

A retaliation plaintiff may demonstrate a triable issue of pretext in the RIF context by identifying evidence that:  (1) his termination doesn't align with the RIF's asserted criteria; (2) defendant deliberately falsified or manipulated plaintiff's evaluation to effect his termination; or (3) the RIF is more generally pretextual.  *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).  Plaintiff here has failed to adduce evidence to create a genuine dispute of material fact to support any one of these three arguments.  The court addresses each of *Beaird*'s three prongs in subparts 1 through 3, following.

### 1.  Does plaintiff's termination comply with the criteria asserted for the RIF?

When an employer evaluates employee performance to determine which positions it can eliminate, it "may choose to conduct its RIF according to its preferred criteria of performance . . . and [the court] will not disturb that exercise of defendant's business judgment."  *Beaird*, 145 F.3d at 1169 (citation omitted).  But some circumstances may arise "in which a claimed business judgment is so idiosyncratic or questionable that a factfinder could reasonably find that it is a pretext" for prohibited employment actions.  *Id.* (citations omitted).  To demonstrate that his employer engaged in pretext by showing a procedural irregularity in its own policies, plaintiff must indicate "some evidence that the irregularity *directly and uniquely disadvantaged the employee*."  *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1089 (10th Cir. 2023) (quotation cleaned up).

Here, defendant supplies testimony asserting that the "furlough, layoff and recall decisions were made based on three factors:  (1) the individual's overall performance rating; (2) the job duties of the position; and (3) seniority if all other factors were equal."  Doc. 24-1 at 3

17

(Leach Decl. ¶ 12); *see also* Doc. 24-11 at 2.  Plaintiff makes no argument and has adduced no evidence capable of showing that "defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances[.]"  *Drury v. BNSF Ry. Co.*, 657 F. App'x 785, 789–90 (10th Cir. 2016).

Plaintiff also has failed to adduce any evidence demonstrating that defendant, when applying the RIF criteria, treated him differently than it treated other similarly situated employees.  *See id.* at 789–90 (recognizing that plaintiff may demonstrate pretext "with evidence that he was treated differently from other similarly-situated employees"); *see also Burdine*, 450 U.S. at 258 (holding that "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally" (citation omitted)); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994) ("To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated."); *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1012 (10th Cir. 2001) (holding that plaintiff can't "pick and choose a person he perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than he" (quotation cleaned up)).

When the COVID shutdown occurred, plaintiff and one other employee held the inventory control/shipping quality inspector position.  Doc. 22 at 4 (Pretrial Order ¶ 2.a.16.). Defendant has adduced evidence that its executives, through the decision-making process, "determined that the Inventory Control/Shipping Quality Inspector position on the first and second shift was unnecessary and could be eliminated."  Doc. 24-1 at 4 (Leach Decl. ¶ 13). When defendant eliminated that position, it discharged both employees who held that position. Doc. 22 at 4 (Pretrial Order ¶ 2.a.16.).  This decision produced the termination of plaintiff's

employment and one other person's employment.  The other inventory control/shipping quality inspector employee had never filed a worker's compensation claim against defendant.  Doc. 24-2 at 5 (Kohr Decl. ¶ 22).  When the COVID shutdown ended and defendant recalled some of its employees to work, 78 of the recalled workers previously had filed worker's compensation claims against defendant.  *Id.* (Kohr Decl. ¶ 23).  And of the 58 employees who defendant laid off permanently, only five had filed a previous worker's compensation claim against defendant. *Id.* (Kohr Decl. ¶ 24).  When "the record establishes that a number of non-protected employees have found themselves in similar circumstances, the plaintiff must show that the employer had established a pattern of granting more favorable treatment to protected employees[.]"  *English*, 248 F.3d at 1012.  Plaintiff here fails to indicate any basis for finding such a pattern.  These uncontroverted facts can't create a genuine dispute of material fact that defendant treated plaintiff differently from other similarly situated employees because of his protected worker's compensation activity when it applied its RIF criteria.

> 2. *Did defendant deliberately falsify or manipulate plaintiff's evaluation to effect his termination?*

Plaintiff asserts that the "pretext in the case at bar for dismissing Plaintiff was a study done by [defendant] that factored in various data.  In spite of ten years of good work [with defendant], the pretextual data gave Plaintiff a rating that allowed for his dismissal."  Doc. 28 at 28.  If a plaintiff can't adduce direct evidence of tampering, he can show pretext by producing circumstantial evidence demonstrating that the responsible supervisor held animus against him to create a genuine dispute of material fact about a falsified evaluation.  *Beaird*, 145 F.3d at 1168.  Or, he can come forward with evidence supporting the reasonable inference or conclusion that "the RIF criteria were deliberately falsified to terminate" him.  *Kawahara v. Guar. Bank & Tr.*, 835 F. App'x 386, 389 (10th Cir. 2020).

Here, plaintiff doesn't provide any evidence of the study he references in his argument, but presumably he refers to the "employee ranking system" defendant used that "placed all RV Products employees into one of nine (9) boxes based on the combination of each employee's believed performance potential and that employee's demonstrated performance[,]" and which defendant "based primarily on that employee's historical performance review scores and disciplinary history."  Doc. 24-1 at 3 (Leach Decl. ¶¶ 7–8).  Plaintiff argues that, through this process, he "was placed in Box 6 regarding potential, which is an average rating—not a bad rating."  Doc. 28 at 28.  And he asserts that because his "work record [with defendant] was very good until his injury" his termination "raises the factual issue of whether Defendant falsified or exaggerated numbers to make sure that Plaintiff was included in a dismissal through the RIF."  *Id.* at 31.

But plaintiff hasn't identified anything in the summary judgment record manifesting the rating he references, explaining what it means, or suggesting that defendant fabricated its application to him, "such that a reasonable jury could return a verdict for the non-moving party on the issue."  *Nahno-Lopez*, 625 F.3d at 1283 (quotation cleaned up).  And he hasn't adduced any prior evaluations to support his argument's characterization of "very good" work record or that the evaluation defendant used during its RIF contained abnormal results.  And, as the court has noted already, plaintiff cites no record evidence that defendant falsified his performance numbers and thus "raises the necessary inference of manipulation."  *Beaird*, 145 F.3d at 1169.  Instead, plaintiff relies purely on bare assertions of wrongdoing and malice, which cannot shoulder plaintiff's burden of persuasion.  *See Yeager v. Fort Knox Sec. Prods.*, 672 F. App'x 826, 831 (10th Cir. 2016) ("To prevent summary judgment, [plaintiff] must go beyond this bare assertion and cite actual evidence in the record supporting [his] statement." (citing *Adler*, 144

F.3d at 671)); *see also Buchanan v. Bridgestone/Firestone, Inc.*, No. 96-6315, 1997 WL 290927, at *2 (10th Cir. May 29, 1997) (holding that plaintiff didn't "present evidence, direct or circumstantial, from which the fact finder might reasonably conclude that [employer] intended to discriminate . . . in initiating the reduction-in-force-policy" (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)); *but cf. Juarez v. ACS Gov't Sols. Grp., Inc.*, 314 F.3d 1243, 1246 (10th Cir. 2003) (holding plaintiff successfully showed pretextual RIF by adducing evidence that defendant retained other less-qualified employees and used inaccurate evaluation criteria).

Likewise, plaintiff's bald assertion that his rating warranted his retention doesn't support his argument either, since it's "the perception of the decision maker which is relevant, not plaintiff's perception of" himself. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (citation omitted); *see also Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991) (holding that "plaintiff cannot prevail by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence (over and above that of the prima facie case)" (citations omitted)).

Plaintiff also hasn't adduced any evidence capable of supporting a finding or inference that defendant falsified the factors it announced it would consider in its recall and layoff decisions deliberately to disadvantage plaintiff. He ignores that defendant asserted it would consider his performance rating as just one factor in its RIF decision. Defendant provides unchallenged evidence demonstrating its reasoning at the beginning of the COVID pandemic in March 2020 and outlining its RIF rationales. Doc. 24-9 at 2–4. Other summary judgment evidence demonstrates that defendant also took the position's duties into consideration when

determining whether RV Products needed to retain the position. *See* Doc. 24-1 at 3 (Leach Decl. ¶ 12); Doc. 24-11 at 2; Doc. 24-12 at 2. To that end, defendant provides evidence that it "determined that the Inventory Control/Shipping Quality Inspector positions . . . were unnecessary and could be permanently eliminated." Doc. 22 at 4 (Pretrial Order ¶ 2.a.16.); *see also* Doc. 24-1 at 4 (Leach Decl. ¶ 13). But plaintiff never identifies any evidence challenging this decision, which forms defendant's principal basis for eliminating plaintiff's position. He can't avoid summary judgment on these grounds. *See Celotex*, 477 U.S. at 323 (holding "there can be 'no genuine issue as to any material fact'" when plaintiff demonstrates "a complete failure of proof concerning an essential element of [his] case").

Plaintiff tries to establish a triable question of supervisor animus when he argues that "the committee who decided his fate on the RIF—three of them—[Robin] Leach (President), [Kristine] Kohr (HR dir.) and Jody McGregor (Vice President) had punished plaintiff in February 2018 for allegedly making a false worker's compensation claim" by writing him up and suspending him for a week.[2] Doc. 28 at 28. But plaintiff has adduced no evidence capable of supporting a reasonable finding or inference that putting plaintiff on leave and issuing him a written notice in February 2018 would implicate a retaliatory motive more than two years later.[3]

---

[2] Defendant contests plaintiff's assertion on two fronts, contending that "there is absolutely no support on the record that Plaintiff was suspended . . . for making a 'false worker's compensation claim'" and "no evidence on the record or in Kristine Kohr's Declaration that Ms. Kohr was a member of the executive team 'who did the evaluation on which they based the RIF.'" Doc. 35 at 29. The summary judgment record establishes that defendant placed plaintiff on leave for a week after the February 20, 2018 meeting. *See* Doc. 24-2 at 3 (Kohr Decl. ¶ 10). Whether the court categorizes that leave as a "suspension" doesn't matter to the analysis. Nor does it matter to the question of whether Ms. Kohr participated in the evaluation process for the RIF.

[3] Plaintiff also alleges that defendant "showed its hostility toward Plaintiff's worker's compensation claim by making his quitting his job a condition of a $40,000 settlement offer. He rejected this offer." Doc. 28 at 24 (Pl.'s Resp. ¶ 92) (citing Doc. 28-1 at 33 (Volking Dep. 185:12–25)). Defendant objects to this statement, arguing that "settlement negotiations offered to demonstrate liability on an underlying claim are inadmissible and expressly prohibited by Fed. R. Evid. 408." Doc. 35 at 25 (citing *Spicer v. RadNet, Inc.*, No. 10-4024-KGS, 2011 WL 3704709, at *4–5 (D. Kan. Aug. 23, 2011)).

Nor does the summary judgment record allow a reasonable jury to find or infer that the named executives didn't follow established procedures or falsified the RIF criteria to disadvantage him. Without more, plaintiff's assertions "can only be speculatively attributed to discriminatory animus and 'speculation . . . will not suffice for evidence.'" *Beaird*, 145 F.3d at 1170 (quoting *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 977 (10th Cir. 1996)).

In short, plaintiff can't identify any evidence in the summary judgment creating a genuine dispute of material fact that defendant falsified his evaluation results, that it fabricated the RIF criteria to disadvantage him, or that his supervisors demonstrated animus toward him.

### 3.   Was defendant's RIF "more generally" pretextual?

Plaintiff's pretext argument rests principally on his assertion that the RIF was pretextual in its entirety, and that defendant chose to terminate 58 total employees to hide the real reasons for firing him. Doc. 28 at 34 ("Even if a RIF is a business necessity, a RIF cannot be used to fire a single employee for an illegal reason."). The evidence plaintiff has adduced to support this position consists of news articles stating that "Scared Americans Desperate to Travel Are Buying Up 'Covid Campers[,]'" "Airxcel adds 135 new jobs in Wichita for manufacturing[,]" and "Wichita manufacturing company hiring 100 after pandemic drove demand[.]"[4]  Doc 28-7 at 2; Doc. 28-8 at 2; Doc. 28-9 at 2. Plaintiff asserts these articles demonstrate "there was no need for a RIF." Doc. 28 at 31. Defendant, plaintiff argues, "knew or should have known that the

---

Defendant's right.  Settlement negotiations are inadmissible as evidence, and the court won't consider plaintiff's assertion as evidence for deciding whether to grant summary judgment.

[4]     Defendant objects to these articles as inadmissible hearsay.  Doc. 35 at 36 (first citing *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, No. 02-MD-1468-JWL, 2008 WL 1884125, at *2 (D. Kan. Apr. 25, 2008) (holding that courts won't "consider excerpts taken from [articles] as statements of 'facts' for summary judgment purposes"); then citing *Phelps v. Hamilton*, 840 F. Supp. 1442, 1448 (D. Kan. 1993) (holding that "newspaper articles[ ] lack a foundation and are inadmissible hearsay"), *aff'd in part, rev'd in part on other grounds*, 122 F.3d 1309 (10th Cir. 1997)).  Because the court decides here that these articles are irrelevant to the summary judgment issue here, it needn't decide about their status as hearsay.

COVID-19 epidemic would be good for [its] business," and, therefore, the "COVID-19 excuse . . . is a lie." Doc. 28 at 31.

These articles are irrelevant to the summary judgment analysis. That the need for a RIF is debatable doesn't establish a triable question of pretext without evidence "either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994) (quoting *Burdine*, 450 U.S. at 256); *see also Furr*, 82 F.3d at 986 (holding that attacking RIF's necessity doesn't suffice to prove pretext). A "RIF is a business decision," so the ultimate "wisdom of a RIF is not for a court or jury to decide." *Furr*, 82 F.3d at 986; *see also Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment." (quotation cleaned up)). Thus, the necessity of defendant's RIF—or the absence of necessity for it—doesn't create a genuine dispute of material fact for the jury to weigh.

Plaintiff also contends that when "jobs became widely available after his permanent layoff, [he] could have done almost any job in the Warehouse." Doc. 28 at 28. Defendant's decision not to recall plaintiff, he argues, "speaks volumes." Doc. 28 at 31. But plaintiff has adduced no evidence of his ability to fill "any job" in the warehouse. *See Li Zu v. Avalon Health Care, Inc.*, 806 F. App'x 610, 617 (10th Cir. 2020) (recognizing that employee's opinion about his own qualifications is "conclusory, self-serving assertions, devoid of factual support, [that] do not create a genuine issue of material fact" (citation omitted)). Also, plaintiff has taken the opposite position—that he returned to work from his injury with certain restrictions which defendant failed to accommodate. Doc. 22 at 6 (Pretrial Order ¶ 3.a.). In June 2018, plaintiff's

work release indicated that he required several restrictions—including lifting, pushing, pulling

no more than 10 pounds frequently (and occasionally no more than 15 pounds); no excessive

bending or twisting of the lower back; no kneeling, squatting, or climbing; and no heavy

equipment operation.  Doc. 24-8 at 2.  These restrictions undermine plaintiff's position that he

could perform "any job" in the warehouse, and plaintiff neither argues nor cites evidence that

physicians had lifted his restrictions when defendant added warehouse positions.

Plaintiff asks the court to draw big conclusions without providing any evidence to

support those proposed conclusions.  To bolster his position, plaintiff cites our Circuit's holding

that "plaintiffs who can't show direct evidence of discrimination may nevertheless prove

discrimination through circumstantial evidence." *Fassbender v. Correct Care Sols., LLC*, 890

F.3d 875, 884 (10th Cir. 2018) (citation omitted).  But *Fassbender* holds that plaintiffs prove

their cases through the very burden-shifting framework whose requirements plaintiff has failed to

meet here.  Defeating a summary judgment motion through circumstantial evidence still requires

*actual evidence* on which a factfinder could build inferences based on circumstantial evidence.

*Beaird*, 145 F.3d at 1170 (holding plaintiff's rhetoric is "mere conjecture and, thus, an

insufficient basis on which to deny summary judgment" (quotation cleaned up)); *see also Kelley*

*v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000) ("A plaintiff cannot

create a triable issue of fact by making an assertion without supporting facts.").

As already discussed in the court's analysis of plaintiff's prima facie burden, the evidence

plaintiff invokes in his Memorandum in Opposition doesn't create a genuine dispute of material

fact about defendant's pretextual motives.  *See supra* Part III.A. (listing and discussing exhibits

plaintiff attached to his memorandum in the prima facie context).  And as the court repeatedly

has concluded throughout this Order, plaintiff can't meet his burden under the modified

25

*McDonnell Douglas* framework because he provides none of the pertinent evidence. Without evidence, plaintiff can't demonstrate a genuine dispute of material fact that defendant's RIF eliminating his position was pretextual. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . (A) citing to particular parts of materials in the record[.]"). Thus, the court concludes that plaintiff can't demonstrate that defendant's legitimate, nonretaliatory reason for eliminating his position was pretextual.

## IV.    Conclusion

In sum, plaintiff can't meet his burden to state a prima facie case of retaliatory discharge because he doesn't make any argument to demonstrate a causal connection between his protected activity and defendant eliminating his position. And even if the court were to hold that plaintiff met his prima facie burden, he hasn't adduced any evidence to demonstrate a genuine dispute of material fact suggesting that defendant's legitimate, nonretaliatory reason—to conduct a RIF because of the COVID pandemic—was pretextual. Thus, for the reasons explained in this Order, the court grants defendant's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Airxcel, Inc.'s Motion for Summary Judgment (Doc. 23) is granted. Consistent with this Order, the court directs the Clerk to enter Judgment against plaintiff.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2023, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

26